Thank you, Your Honor. Steve Moss on behalf of Mr. Helm. This case presents the issue of whether an adjustment applied at an original sentencing should still be applied in a subsequent 3582C2 sentence reduction proceeding. It's Mr. Helm's position that the word adjustment is a term of art in the same way that the terms variance and departure are terms of art. We contend that because the adjustment is something different than a variance and different than a departure, it forms part of the guideline calculations, and pursuant to Dillon, it is one of those determinations that cannot be revisited in a 3582 sentence proceeding to reduce a sentence. I believe Kiefer from this court is on point. Kiefer talks about a mandatory minimum sentence, and the way the adjustment works under 5G1.3b is even if someone faces, say, a 60-month mandatory minimum, pursuant to 5G1.3, the sentence is running concurrent. It was part of the federal sentence, and for that reason, I'm going to decrease the sentence to make sure it's fully concurrent. So even with the mandatory minimum, a district court can sentence below that term pursuant to 5G1.3. So I believe Kiefer, and if you look at mandatory minimums, that provides a good example of how an adjustment works and how an adjustment is different than a variance or a departure, which would not allow a district court to go below a mandatory minimum. Subsequent to the filing of Mr. Helms' brief, this court did decide, and I believe authored by Judge Colleton, United States versus White. I would contend that United States versus White is not applicable here for two reasons. Well, first of all, United States versus White pertain to Section 5K2.23. That's under the sections of departures, and it is not a controversial proposition that a district court in a sentence reduction proceeding can't go below the low end of an amended range. That's not disputed, except for substantial assistance. Now, as noted above, adjustments are not the same thing as variances or departures. Now, I would acknowledge that White does in dictum seem to indicate that 5G1.3b is pretty much the same as 5K2.23, but we would contend that that dictum is not controlling and should not be followed based on previous case law, specifically United States versus Carter, which specifically describes and uses both terms, adjustment and variance, to describe the function of 5G1.3. In Carter, the court applied a 24-month adjustment, and that became the guideline range. Then in Carter, the court also affirmed the 105-month sentence, which it described as a variance. It refers to the 105-month sentence as a variance, so what I'm saying is its reference to the 105-month sentence as a variance implicitly implies that the variance was above the guideline range, which would be, which would include applying the adjustment. Well, Judge Collin, I think you've honed on specifically on the conceptual gap here that is really the heart of the issue here, and it's our position that the adjustment adjustment is part of calculating the guideline range rather than something that applies after the guideline range is calculated, but . . . Well, that has to be a repetition, and so how do you get to that conclusion? To . . . Well, first of all, I think the commentary does distinguish between the terms adjustment and departure, and at least in the application notes, they specifically use the term adjust, adjusted, and adjustment, which further recognizes a distinction, and that's the way they're sentence? The guideline range itself. It's an adjustment . . . What says that? Because to me, it's more of a credit once you've determined what's the final sentence or what the sentence is. Judge Grunder, I agree. It is a credit, but it is a credit to effectuate concurrent sentencing. I think one key point that helps here, if you look at the location of 5G, it's under in a different section of Chapter 5 of the guidelines. Our characterization, and we believe that Carter supports this view, is that this adjustment is akin to a guideline calculation that was made at the original sentencing, and not only should it be made here, but our unaffected by . . . based on the limitations of a sentence reduction proceeding. If you look at 1B1.1, Step 7 says determine the guideline range, right? Yes. And then Step 8, for the particular guideline range, then look at Part G. Doesn't that sort of suggest that the guideline range is fixed before you look at Part G? I think it's somewhat ambiguous, but I believe if you look at the overall structure of the way the sentence credit is designed to work, that it is part of the guideline range. Carter refers to a guideline range after, or at least the ultimate sentence as being a variance, so I think that necessarily implies the lower sentence is part of the guideline range. I do see that I am into my rebuttal time. I would like to . . . I don't understand that. Let's say we had a departure down. That would not be . . . Are you saying a departure is part of the guideline range? No. No, departures and variances are outside of the guideline range. Then you could have a downward departure below the guideline range, and then an upward variance. And that variance doesn't imply that the departure was part of calculating the guideline range, right, if I follow your analysis of departures and variances? I don't . . . Technically, I'm having trouble conceiving of a case where a court would depart downward, but then very upward, so I'm having trouble grappling with that concept. I agree that departures and variances are outside the calculation of the guideline range, but we believe Carter and the structure of the guidelines does support a reading that the adjustment is part of that final range. And if you look at the original, it's different now, but if you look at the commentary for 5G 1.3 in prior guideline manuals, there's a reference to on the judgment and commitment, you need to explain that this adjustment is not a variance or departure. It's there to provide for jail credit that would not otherwise be provided . . . credited by the Bureau of Prisons. So I think that prior history, and although it's not there now, I think that also supports the view that it is guideline range we're talking about. I would like to reserve what little time I have left for rebuttal. Very well. Mr. Coppe, over to you. May it please the Court. My name is Phil Coppe. I represent the government in this case, and I think the Court, through its questions, has pretty much figured out what the issue is. Is this downward adjustment part of his guidelines range? And the answer, of course . . . I forgot my book. The answer, of course, is no, it isn't, and no, it cannot be. When you stop at Part A, Chapter 5 of the guidelines, you have done your guidelines calculations. Absent reversal on appeal or whatnot, those are carved in stone. They don't change. Now, that's not the end of the guidelines. You have approximately 200 more pages, but in none of those pages, in none of those pages do you ever recalculate the guidelines. And what happens here is I know there's some confusion. It's almost like when you buy a new car and you have a trade-in, and the guy wants to try to slop in and give you one price and not show you this is what you're getting on the new car, this is what we're giving you for your trade-in. You can't commingle those. And that's sort of what Mr. Moss is trying to do here. If he were to have argued on direct appeal, the reasonableness of that sentence, the reasonableness of the sentence would have been the sentence prior to that 17-month adjustment. Because the 17-month adjustment, that's the trade-in. He's already done that time. All right. When you get past Part A of the guidelines, Chapter 5, you are no longer recalculating anything. All right. And in fact, what we're talking about, 5G 1.3 says that that adjustment is to come off the sentence. So what the guidelines really envision is a three-step process. Process number one, you calculate the guidelines. And once you calculate the guidelines, those guidelines are fixed. Yes. Well, that's an interesting question, Judge. The answer, I guess, is yes. I've read that opinion. I can't tell you how many different times. The way I read it is that they're looking at 21 and 1A as sort of the overarching figure of the eight steps that follow. It says the court shall determine the guideline range is set for the fall. I think they say, well, then that includes all eight steps, including Part G. And I think that's a clear misreading. I see that, you know, I'm reading from page 1339 that said, as a result, unlike with a 5G 1.3B adjustment, which a court must reapply under 1.B point, yeah. I don't, that doesn't, it doesn't follow. I know what they're saying, but it doesn't make any sense. It violates the structure of the guidelines, because if I may be allowed to continue, once you do the guidelines calculations, then the judge is entrusted with using those calculations and the 3553A factors to come up with a prospective sentence, all right? That's the sentence that if they, it were to be appealed, that's the sentence where the court would determine whether that's reasonable or not. Because you can't, you can't mess up the calculations by backing in that, in this case, 17-month sentence that he gets credit for that, all right? So that's not part of the guidelines at all. That comes off after the guidelines have already been calculated. And Judge Colleton's opinion makes that very clear. Now, I know Mr. Moss says it's dicta. Basically, you have an opinion that says, here's the short answer and here's a longer answer. And so the question is, threshold question, is it, is it really dicta? I don't think so. All right. Well, but you would agree that the more important issue is, were you right? Because if you were correct, then Mr. Moss necessarily loses. And our position is, when you look at how the guidelines are structured, once you, once you get to Part A of, of, of Chapter 5, you're done with the calculations. There's no more calculations to be done. That, that sentencing guideline, you can talk about departures, you can talk about variances, you can talk about downward adjustments, but they don't impact the guideline range. And I think that's further illustrated by the fact that when you look in Mr. Moss's brief, you'll see all of these guideline ranges that he's talking about, after he's taken the 17-month off of both sides. You can, you can look, sorry. Because I don't, I don't think they analyze it correctly. I don't think they do the analysis, Judge, that you did in the White case. All right. It almost, it almost looks to me, I'm sorry, it almost looks to me that they just assume that this comes off. I, I don't see any real analysis here. And I don't see them, I don't see them talking about the language in, in 1.B10.B2. Because in reality, I don't see them looking at the language 1.B10.B2. The language that says except, 1B, 1B1.10. Sorry, I'm misstating. 1B1.10. Right. B2. B2. Yes. That language, the limitation of that language that says except as provided in subsection B, the court shall not reduce a defendant's term of imprisonment under 18 U.S.C. 3582C2 and these policy statements to a term less than the minimum of the amended guideline range under subsection 1 of this section. What Mr. Moss I think they're saying that the 5G calculation is part of the 10 U.S. Guidelines. Let me maybe give you a paragraph to see what you think. All right. Well, I was, okay. I was, I wasn't quite finished, but go ahead. All right. Well, no, I'll take all the, I'll take all the help I can get. Okay. Looking at 1B1.1A, which, as I read the 11th Circuit opinion, they say, they say that A is governing for the court shall determine the guideline range and 1 through 8 below. What they read out of it is it says the court shall determine the kinds of sentence and the guideline range. So if I were in your shoes, I'd be arguing that Part A is modifying kinds of sentences. Well, and that'd be true, but I, my argument, my argument is, is that what Mr. Moss is attempting to do is attach an addendum to 2A to include the sentence it would have to read minus any adjusted, any adjustment deducted from the sentence under 5G1.3B. If it said that, then he would be right. He is attempting to amend the guideline. I don't think his, his beef here is with the government or, or with the Judge Wimes or even Judge Colleton's opinion or dicta. I think it's with the Sentencing Commission. I think he's saying the Sentencing Commission should have taken this into account and didn't. I know he says he did, but, you know, again, it all comes down to the question of whether, in fact, this reduces, this adjustment reduces the guideline range, and it clearly does not. It can't. It's in a guideline section that does not reduce an individual's guideline range. And once you recognize that, his argument evaporates. Well, I have two minutes left, but unless there are any further questions, that concludes my argument. Thank you. Thank you, Mr. Patterson. Do you want to make a proposal, Mr. Moss? Very briefly, Your Honor. I, I do want to return to Carter because I believe Carter implicitly does refer to the adjustment as then creating a reduced range. In Carter, the Court found an initial range of 84 to 105 months. The Court applied a 24-month adjustment which reduced that to 60 to 81 months, and then this Court affirmed, and it's specific on page 896-97, describing that the sentencing judge had found the applicable guideline range inappropriate and imposed an upward variance. Was the issue presented there? I mean, was it discussed whether that constituted a guideline? I understand the language and I support what you're saying, but was the issue specifically It was an adjustment. That, that was one of the issues is whether or not the Court had applied the adjustment, and at least Carter implicitly holds that, yes, after you apply the adjustment, that's the guideline range, and then you measure any upward adjustment or variance, rather, has to be tethered to that original guideline range or that applicable guideline range. So we believe it and impliedly does treat it as the applicable range. Excuse me, but did you follow my argument with respect to why I completely understood what might be wrong? Not entirely, Your Honor, but I would like to address the question if you'd like to. Well, I was going to ask you to address it if you understand it. Frankly, Judge, I didn't totally follow that argument. I apologize. Say again, which part of Carter do you think is important? Page 896 and 97, the Court affirms, and specifically I thought there was some specific language you referred to. No, Judge, just the way that, just how they're referring to the guideline range as the adjustment as being something that helps the Court determine the applicable guideline range. But does it actually say that, I'm just trying to see where the opinion says that page 1.3 is part of determining the end range, as opposed to an adjustment after the range is determined? Well, Judge, the way I read it, and I'm just going from my brief at this point, but the way I read it is they refer to the range as 60 to 81 months and 105 months as a variance from that range, or measuring the variance from that range. Well, it does say Carter asked the Court to reduce the range by 24 months to 60 to 81 months. It does say that, but that's referring to Carter's argument. We'll take a look at it. Thank you very much. Thank you, Your Honors. The case is submitted and the Court will call the hearing.